IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

  v.                              CRIMINAL NO. 1:23-CR-69
                                        (KLEEH)

CHRISTOPHER HARP,

       Defendant.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

      Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, Defendant has moved for a judgment of acquittal or, in the alternative, a new trial [ECF No. 84]. The Government filed a response in opposition [ECF No. 85]. For the reasons discussed herein, Defendant's motion is **DENIED**.

### I.   PROCEDURAL HISTORY

      On November 7, 2023, the grand jury returned a four-count indictment charging Defendant Christopher Harp ("Defendant") in Counts One through Three with Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1), and in Count Four with Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).[1] Following a three-

---

[1] Count One asserts that the receipt occurred on or about April 4, 2019. Count Two asserts that the receipt occurred on or about September 18, 2020. Count Three asserts that the receipt occurred

USA V. HARP                                                        1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

day trial, the jury found Defendant guilty on all four counts.  On April 25, 2024, prior to the jury's deliberations and at the close of the Government's case-in-chief, Defendant, by counsel, moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  The Court denied the motion.  Defendant filed the pending motion on June 13, 2024, and the Government filed its response on July 3, 2024.

## II.  BACKGROUND

At trial, Defendant conceded that child pornography was on the laptop in question (Government Exhibit 1) but denied any knowledge of how it got there.  He presented an alibi defense, arguing that he was not home when the child pornography was downloaded, viewed, and deleted.  Throughout the trial, Defendant also posited the theory that his brother, Jeremy Harp, was responsible for downloading, viewing, and deleting the child pornography found on the laptop.

The Government called Special Agent Ed Ryan ("Agent Ryan") with the Federal Bureau of Investigation ("FBI") as its first witness.  Agent Ryan testified that through software utilized by the FBI, it was discovered that child pornography was being made available for sharing from a specific computer in Monongalia

---

on or about September 21, 2020.  Count Four asserts that the possession occurred on or about September 25, 2020.

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

County, West Virginia, through a peer-to-peer network called "Shareaza." Trial Tr., Day 1, at 31:19-36:24. Agent Ryan linked the specific computer, between December 2018 and September 2020, to an IP address at 904 Bloody Run Road, Morgantown, West Virginia. Id. at 60:20-25; 70:15-22. The subscriber's name was Christopher Harp. Id.; Government Exhibits 5A and 5B. Agent Ryan also linked the specific computer, prior to June 2018, to an IP address at 944 Bloody Run Road, Morgantown, West Virginia. Trial Tr., Day 1, at 50:5-7; Government Exhibit 4. The subscriber's name was Robert Westwood. Government Exhibit 4. Agent Ryan testified that Government Exhibits 9A, 9B, and 9C were Child Protection System logs that documented what the specific computer offered for sharing on April 4, 2019, September 18, 2020, and September 21, 2020. Trial Tr., Day 1, at 61:5-63:20. Agent Ryan testified that downloading from Shareaza can be done at scheduled times, but he did not offer evidence that any such scheduled downloads took place in this case. Id. at 37:20-38:19.

Agent Ryan provided his information to FBI Special Agent Corey Thigpen ("Agent Thigpen"). Agent Thigpen applied for and obtained a search warrant for 904 Bloody Run Road. Id. at 97:3-8. On the morning of September 25, 2020, federal agents and local police executed the search warrant. Id. at 98:17-21; 115:12-20. Multiple devices were seized from the home, including, most relevant here,

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

an HP laptop computer found in the loft area (the "laptop") (Government Exhibit 1) and a thumb drive located in the craft room (the "thumb drive") (Government Exhibit 2).  Id. at 116:6–118:1. Agent Thigpen testified that as he went through the residence, he saw no indicia of occupancy by any person other than Defendant, his wife Amy Harp, and their child.  Id. at 124:14–21.

Detective Friend with the Monongalia County Sheriff's Office testified that he participated in the search of the residence and found the laptop in the loft area of the home, on the floor, next to a chair, in what appeared to be Defendant's office area.  Id. at 116:9–13; 151:15–152:19.  He testified that the laptop did not appear to be hidden, and it looked to be between the chair and the wall.  Id.  The laptop appeared to be plugged in.  See Government Exhibit 7H.  In the loft, law enforcement also found what appeared to be Defendant's work computer and some work-related paperwork. Trial Tr., Day 1, at 120:14–121:7.  Agent Thigpen testified that while the search was being conducted, Defendant repeatedly looked up toward the loft.  Id. at 114:17–115:5.

Peter Hammer ("Hammer") did a forensic review of approximately 30 devices seized from the home.  Trial Tr., Day 2, at 10:20–24.  Hammer has since retired, but he previously worked as a forensic analyst and a system administrator with the FBI. Id. at 6:2–23.  Hammer submitted a report of his findings in

USA V. HARP                                                      1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

February 2022.  Id. at 21:17-19.  At trial, Hammer was found to be an expert in computer forensics.  Id. at 8:1-14.

Hammer testified that he made an exact duplicate of the laptop's hard drive and examined it.  Id. at 11:18-12:11.  He testified that the laptop was operating on Windows Vista, which is an "old" version of Microsoft.  Id. at 13:1-5; 72:15-19.  He observed video files in the laptop's recycle bin that contained suspected child pornography.  Id. at 14:4-10.  The videos were accessible and playable without any special knowledge or skill.[2] Id. at 16:4-18.

Hammer conducted further analysis of the laptop to see if it was possible to determine who had used the laptop for what.  Id. at 21:7-15.  He learned that the operating system was installed in April 2011 and that one main account was used.  Id. at 21:20-22:16.  Hammer located various "restore points" in the laptop. Id. at 22:17-25.  He testified that a restore point is an earlier version of a computer's operating system.  Id. at 23:1-16.  Restore points are sometimes created when a computer runs a software

---

[2] Hammer testified that when a file is downloaded, the hard drive contains data about how and when the file arrived there.  Trial Tr., Day 2, at 17:5-18.  Typically, when a file is deleted, the file goes to the recycle bin, where the original name and other information is saved by the computer, so that if someone opens the recycle bin and wants to restore the item, the computer will send it back to the place where it was originally located.  Id. at 18:10-19:22.

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

update.  Id.  Essentially, a restore point operates as a backup of the files that have been saved, deleted, moved, or altered since the computer's last backup.  Id.  It saves the system as it was at the time of the update, in case something goes wrong with a future update and a return to the previous version is needed.  Id.

Hammer then reviewed the files in the restore points.  Hammer testified that the restore points showed a history of downloading and deleting child pornography, going back to dates preceding the charges in the Indictment.[3]  The oldest restore point available was from July 8, 2016.  Id. at 26:2-7.  On that restore point, Hammer found that someone with the usernames "charp51" and "chrisharp51" had logged into various accounts on the laptop.  Id. at 26:2-23.  He found that files containing the phrase "PTHC"[4] were accessed between June 2012 and September 2012.  Id. at 27:13-23. Hammer found a video from a well-known child pornography series in the file registry, which was downloaded in July 2013.  Id. at 27:24-28:15.  He testified that the next restore point showing indicia of child pornography was from July 28, 2016.  Id. at 30:10-31:9.  The restore point revealed that someone had used Shareaza

---

[3] The Court ruled that the historical evidence was admissible under Rules 404(b) and 414 of the Federal Rules of Evidence.  See ECF No. 60.

[4] Agent Ryan testified that "PTHC" means "pre-teen hard core." Trial Tr., Day 1, at 53:18-20.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

to partially download eight files of suspected child pornography and fully download five video files of suspected child pornography. Id. The restore point reflected that the terms "pedomom"[5] and "pthc" were utilized and added to the search history. Id.

Hammer testified that the next restore point was from July 29, 2016, and it reflected that the files from July 28, 2016, had been marked for deletion. Id. at 31:20–32:6. One new term had been added to the Shareaza search terms: "pthc mom." Id. at 32:10–13. Hammer testified that the next restore point was from August 3, 2016, and it showed that two files containing suspected child pornography were partially downloaded and a third was fully downloaded. Id. at 33:2–13. He testified that the next restore point was from August 5, 2016, which showed that the files from August 3, 2016, had been marked for deletion. Id. at 33:22–34:7. Three new terms had been added to the Shareaza search history: "pae," "Vicky,"[6] and "Private pae 2." Id. at 34:12–17.

Hammer testified that there were two restore points from August 16, 2016. Id. at 35:11–13. The first restore point showed that four files were partially downloaded and one file was fully

---

[5] Agent Thigpen testified that "pedo" refers to "pedophile" or "pedophilia," and "pedomom" refers to pedophilia involving a mother. Trial Tr., Day 2, at 124:18–22.

[6] Agent Ryan testified about an especially graphic and well-known child pornography video known as the "Vicky series." Trial Tr., Day 1, at 68:17–69:1.

USA V. HARP                                              1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

downloaded, and the file names indicated potential child pornography. Id. at 36:4–37:5. The first restore point showed that additional search terms were added to the Shareaza search history: "cbaby" and "a family affair." Id. at 36:22–37:1. The second restore point indicated that a video file shown as downloaded or partially downloaded in the first restore point had been marked for deletion. Id at 37:6–16.

Hammer testified that the next two restore points were from April 24, 2018. Id. at 37:17–39:11. On that day, there were an additional four partial downloads of potential child pornography. Id. at 38:19–24. Hammer also testified that a restore point from April 24, 2018, showed "Charp51" logging onto governmentjobs.com that day. Id. at 38:7–15. It also showed that "charp" logged onto stradlink.stradenergy.com that day. Id. The restore points from April 24, 2018, showed that a new version of Shareaza was downloaded that day. Id. at 39:4–8. Hammer then testified about a restore point from April 30, 2018. Id. at 39:21. On that day, the recycle bin contained 24 potential child pornography videos. Id. at 40:7–11. The Shareaza search terms included "pedomom boy," "pedomom," and "a family affair." Id. at 41:7–10.

Hammer then testified about a restore point from April 4, 2019. Id. at 41:11–12. The restore point showed 15 downloaded video files of potential child pornography on the laptop. Id. at

USA V. HARP                                                      1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

41:16-19. The recycle bin contained 24 potential child pornography videos. Id. at 41:20-23. The Shareaza search history contained 12 search terms, including the following new terms: "PTHC car," "PTHC family," "Vicky," "PTHC teen," "PTHC," "Kylie talk," "Kylie," "QQAAZZ," and "PTHC mom." Id. at 42:11-14; 45:23. Hammer indicated that the restore point from April 4, 2019, was the final point preceding the "current restore point." Id. at 45:23-25.

The current restore point showed that 15 potential child pornography video downloads and numerous partial downloads had been marked as deleted. Id. at 45:8-14. Hammer testified that he reviewed the Shareaza search term list contained in the current restore point and found that a new search term had been added in Shareaza: "Vicky American Pie." Id. at 45:23-25. Hammer explained that he found that the video player used by the laptop had a MRU ("Most Recently Used") video list. Id. at 55:6-22. He provided the MRU list to Agent Thigpen, in addition to all of the files and information contained in the restore points. Id. at 19:23-20:3. Hammer stated that in reviewing the current files and the files in the restore points, he found evidence of only two individuals utilizing the laptop: Christopher Harp and Amy Westwood (née Harp). Id. at 47:8-12. Hammer observed that the log-in count for each restore point, which showed how many times

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

the system had been signed into, typically went up by one for each restore point. Id. at 29:8-39:20.

Hammer testified that in reviewing the evidence seized in this case, he also found that the thumb drive (Government Exhibit 2) contained evidence related to possession of child pornography.[7] Id. at 49:7-50:11. The thumb drive, when reviewed with software used by the FBI, showed that at least two videos of suspected child pornography were placed on the thumb drive between November 2009 and January 2010. Id. at 51:14-52:6. The files themselves are no longer on the thumb drive. Id. at 61:7-20. Hammer testified that other thumb drive documents appeared to reference Defendant and his college exams/classes, and the documents were created within one or two months of the child pornography files. Id. at 52:12-19; 119:21-120:22. Hammer did not notice any documents on the thumb drive that were attributable to other users. Id. at 113:22-25. He testified that the thumb drive was used with the laptop at some point. Id. at 53:3-7. On cross examination, Hammer stated that the only account that appeared to have been used for the laptop's operating system was the administrative account, and a guest account had not been used. Id. at 63:16-64:1. Hammer also

---

[7] The Court also ruled, prior to trial, that the historical evidence on the thumb drive was admissible pursuant to Rules 404(b) and 414 of the Federal Rules of Evidence. See ECF No. 60.

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

testified on cross examination that the laptop had not been fingerprinted. Id. at 66:21–23.

Hammer testified that he did not know if downloads could be scheduled through Shareaza, but he knew that in order for child pornography to be deleted, the operator of the computer would need to be present at the computer. Id. at 62:17–63:2. During the times when child pornography was downloaded, viewed, and deleted, Hammer found no other contemporaneous searches or work being performed on the laptop that would indicate who was actually operating the laptop during those times. Id. at 76:21–25.

Agent Thigpen testified that he prepared Government Exhibits 8A through 8O, which were clips of videos found in the laptop's current recycle bin. Id. at 126:3–7. He testified that Government Exhibits 8A through 8L depicted adults engaging in sexual activity with children. There is no dispute in this case that the videos constitute child pornography. Agent Thigpen testified that Government Exhibits 8M, 8N, and 8O were "bait files." He testified that the bait files depict a foreign law enforcement official explaining to the viewer that the viewer has downloaded a file from a police computer, and law enforcement may be aware of the viewer's location. Id. at 142:19–143:3. With respect to Government Exhibits 8A through 8O, Agent Thigpen testified that the video files had one or more words in the titles that were also

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

in Shareaza's saved search terms. Id. at 145:2-8. Agent Thigpen reviewed the child pornography found in the historical restore points and concluded that the pornography was of the same type or genre as the child pornography found or referenced in Government Exhibits 8A through 8O. Id. at 148:9-149:4. He testified that the content of all of the videos included "small children, incest/family-related, pedophilia-type videos." Id. at 148:25-149:4.

The following evidence was established: the videos of child pornography in Government Exhibits 8A, 8B, and 8C were downloaded on April 4, 2019, between 7:55 a.m. and 7:56 a.m., and the file names were included in Government Exhibit 9A (Count One); the videos of child pornography in Government Exhibits 8D, 8E, and 8F were downloaded on September 18, 2020, between 3:12 p.m. and 3:19 p.m., and the file names were included in Government Exhibit 9B (Count Two); and the videos of child pornography in Government Exhibits 8G, 8H, and 8I were downloaded on September 21, 2020, between 11:59 a.m. and 12:34 p.m., and the file names were included in Government Exhibit 9C (Count Three).

Aside from analyzing the devices taken from the Harps' home on September 25, 2020, no other investigation was performed. Agent Thigpen testified that no one else, including any neighbors or other family members who lived in the area, was questioned as to

USA V. HARP                                                      1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

who had access to the Harps' home.  Trial Tr., Day 1, at 144:12-145:21.  He also testified that no fingerprint analysis was performed on any of the seized devices.  Id. at 129:24-130:2.  No analysis of Defendant's cell phone was performed to determine whether Defendant was at home during the alleged downloading, viewing, or deleting of child pornography.  Id. at 77:3-19.

Amy Harp, Defendant's wife, testified at trial for the defense.  She testified that she and Defendant met in June 2012 and were married in 2015.  Trial Tr., Day 2, at 157:9-10; 188:3-5.  With respect to Count One, Amy testified that Defendant was not home on the morning of April 4, 2019, because he was working for Strad in Waynesburg, Pennsylvania, and he typically left for work between 7:00 and 7:30 a.m.  Id. at 169:15-171:2.  She testified that Defendant had a job interview in Pittsburgh that day.  Id.  On cross examination, she claimed to specifically remember that morning because she took pictures of her daughter, but she did not remember whether Jeremy Harp was at her home that day.  Id. at 194:10-14; 195:4-13.

With respect to Count Two, Amy Harp testified that she was not home on the afternoon of September 18, 2020, but Defendant, at that time, was working for her father, remodeling a home for Dr. Fogarty.  Id. at 171:3-172:13; 174:7-14.  She testified that Defendant and her father would typically leave for work between

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

9:00 and 10:00 a.m. and would typically work until 5:00 or 6:00 p.m.  Id. at 173:11–16.  She did not know whether Jeremy was at her house that day, but she testified that Jeremy was not at her house when she returned home.  Id. at 197:9–13.

With respect to Count Three, Amy Harp testified that she and Defendant purchased a car together at Dan Cava's in White Hall, West Virginia, on September 21, 2020.  Id. at 174:18–175:2.  She testified that they arrived at the dealership around 9:00 a.m. Id. at 175:8–10.  She testified that Dan Cava's is 30 minutes from her house when driving on the interstate.  Id. at 197:18–20.  She testified that although she texted her mother around 10:00 a.m. that they had the car, they did not leave the dealership until around 12:00 p.m.  Id. at 177:14–16.  She testified that she and Defendant did not arrive at home until around 1:00 p.m. because they took back roads and stopped twice so that she could use the restroom (she was pregnant at the time).  Id. at 177:18–24.  She testified that she dropped off Defendant at 1:00, went to show her mother the car, and then went to a doctor's appointment by herself, arriving at the appointment at 1:30 p.m.  Id. at 178:1–11; 200:14–24.  Amy testified that she did not see Jeremy at her home when she dropped off Defendant.  Id. at 202:1–6.  She also testified that she received a text from Sirius XM at 12:50 p.m., and she was already home by that time.  Id. at 214:16–22.

14

USA V. HARP                                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

Amy testified that Jeremy, among others, had access to her home in 2019 and 2020 via the garage code. Id. at 178:12–21. She testified that Jeremy was knowledgeable about computers. Id. at 182:14–25. Amy testified that Jeremy helped the Harps move into her parents' home in July and August 2016, and then Jeremy helped the Harps move into their own home in 2018. Id. at 210:8–24. She testified that Jeremy was homeless in 2018 and 2019 and stayed at the Harps' home sometimes. Id. at 178:22–179:4.

Amy testified about other individuals who had access to the Harps' home when she and Defendant were not present. Id. at 178:12–15. She also testified that the password to the laptop was available on a post-it note on a computer tablet in the home. Id. at 183:24–184:5. Amy testified that she had used the laptop on many occasions, that the laptop was used in different areas of the home, and that she had never seen any child pornography on it. Id. at 160:22–161:13; 186:22–187:1. She testified that she never saw an icon or link that would indicate that any peer-to-peer network had been installed on the laptop. Id. at 187:2–11.

Defense witness Rebecca Bodkin testified that she is Amy Harp's sister and lives very close to the Harps' home. Id. at 223:3–6. Rebecca Bodkin testified that numerous individuals had access to the Harps' home through the garage door code, including Rebecca, her husband, her parents, and her brother while he was

15

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

alive. Id. at 226:3-11. She testified that Jeremy had lived with the Harps for a period of time and would show up to the home when the Harps were not present. Id. at 226:12-227:9. She also testified that Defendant worked with her father in September 2020, remodeling a home for Dr. Fogarty, but she had no personal knowledge of whether Defendant was at the job site on September 18, 2020. Id. at 228:1-229:6.

Defense witness Brenda Westwood testified that she is Amy's mother (Defendant's mother-in-law). Id. at 232:8-9. She testified that Defendant worked with her late husband remodeling a home for Dr. Fogarty in 2020, but she did not have personal knowledge of whether Defendant was at the site on September 18, 2020. Id. at 236:5-237:6. She testified that Jeremy had helped the Harps move into her own home and helped the Harps move out in 2018. Id. at 233:15-234:12. She testified to seeing Jeremy at the Harps' home when no one else was there, but she could not say when it was. Id. at 234:23-235:14. She testified that she told Amy about it. Id. She also testified regarding a number of individuals who had access to the Harps' home via the garage code. Id. at 235:19-25. She testified that on September 21, 2020, Amy arrived at her (Brenda's) house around 12:00 p.m. in her new vehicle without Defendant. Id. at 237:15-25. She testified that she (Brenda)

USA V. HARP                                                        1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

never gave Jeremy the Wi-Fi password for her home.  Id. at 240:20–22.

Defense witness Beverly Sheets testified that she is a long-time friend and neighbor of the Westwood family.  Id. at 243:12–244:4.  She testified that she had access to the Harps' home and would sometimes watch the Harps' pets while they were away.  Id. at 246:4–13.  She testified that Amy told her that she did not want Jeremy in her home.  Id. at 245:4–8.  On one occasion, Beverly believed that she saw Jeremy coming down the Harps' driveway.  Id. at 245:14–21.  She testified that she did not know when that occurred, but she told Amy about it.  Id. at 246:1–3.

Defendant testified during trial as well.  He denied any knowledge of child pornography on the laptop or the thumb drive. Trial Tr., Day 3, at 6:18–22; 23:21–24:4.  He testified that he purchased the laptop as a used laptop in 2011, and Jeremy and his father helped him set it up.  Id. at 6:23–7:10.  He testified that Jeremy set up the password on it, and the password was never changed.  Id. at 8:6–1.

Defendant stated that the thumb drive was his while he was in school, and he was living with his mother, his father, and Jeremy at the time.  Id. at 6:2–14.  He testified that Jeremy was a computer expert who could log onto Wi-Fi systems without passwords and knew how to "hack."  Id. at 7:21–8:5.  He testified that Jeremy

17

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

stayed at Defendant's home while he and Amy were moving, and Jeremy would have had access to the laptop.  Id. at 11:1–12:5.

With respect to Count One, Defendant testified that on April 4, 2019, he was not home because went to work and then to a job interview in Pittsburgh.  Id. at 13:11–14.  With respect to Count Two, he testified that on September 18, 2020, he was working for his father-in-law at a job site in Bruceton Mills, West Virginia. Id. at 16:17–25.  With respect to Count Three, Defendant testified that on September 21, 2020, he purchased a car at Dan Cava's with Amy.  Id. at 18:2–11.  He testified that he and Amy did not leave the dealership until 12:00 p.m. because they were waiting for insurance information.  Id. at 18:18–24.  Defendant testified that no one was at his home when he returned around 1:00 p.m., but he does not know who was in his home while he was gone.  Id. at 55:1–9.

Defendant testified that Jeremy lived with him in 2018 and 2019 and would show up randomly.  Id. at 19:3–15.  He stated that Jeremy had access to the home via the punch code and could have gone inside without Defendant's knowledge.  Id. at 19:16–21.  He testified that at one point, Jeremy listed 904 Bloody Run Road as his residence.  Id. at 19:22–24.  He testified that the last time Jeremy was at his home, that he knew of, was in August 2020.  Id. at 42:9–20.  Despite testifying that Defendant and Amy were

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

concerned about Jeremy visiting their home without permission, Defendant testified that he and Amy did not change the locks, change the garage door, or begin locking the mudroom door.  Id. at 49:12-23.  He also testified that Amy never told the FBI about Jeremy.  Id. at 31:25-32:4.

### III. <u>APPLICABLE LAW</u>

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden."  <u>United States v. Martin</u>, 523 F.3d 281, 288 (4th Cir. 2008) (citing <u>United States v. Beidler</u>, 110 F.3d 1064, 1067 (4th Cir. 1997)).  He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt."  <u>Id.</u> at 287-88 (citing United <u>States v. Burgos</u>, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).  When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it."  <u>Beidler</u>, 110 F.3d at 1067 (citation and quotation marks omitted).

USA V. HARP                                                      1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

The court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).  It is the jury, and not the court, who "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (citation omitted).  Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

Rule 33(a) of the Federal Rules of Criminal Procedure permits the Court to vacate a criminal conviction and "grant a new trial if the interest of justice so requires."  However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (citation and quotation marks omitted).

## IV.  DISCUSSION

Defendant asserts that the Government presented insufficient evidence to establish Defendant's knowledge of the presence of child pornography on the laptop.  The Court disagrees.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

With respect to Counts One through Three, the Court instructed the jury as follows:

> The defendant, Christopher Harp, is charged in Counts One through Three of the Indictment with Receipt of Child Pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(b)(1). Title 18, United States Code, Section 2252A(a)(2) makes it a crime to transport in interstate commerce, receive, or distribute, sell or possess with intent to sell child pornography.
>
> For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt:
>
> (1) that the defendant knowingly received
>
> (2) any child pornography, or any other material that contained child pornography
>
> (3) using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. The government is required to prove that the defendant knew that the visual depiction portrayed a person under the age of 18 and that the minor was engaged in sexually explicit conduct.

ECF No. 75 at 14–15. With respect to Count Four, the Court instructed the jury as follows:

> The defendant, Christopher Harp, is charged in Count Four of the Indictment with Possession of Child Pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2). Title 18, United States Code, Section 2252A(a)(5)(B)

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

> makes it a crime to transport in interstate commerce, receive, or distribute, sell or possess with intent to sell child pornography. For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt:
>
> (1) that the defendant knowingly possessed or accessed with intent to view a computer disk or any other material that contained an image of child pornography
>
> (2) that had been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or was produced using materials that had been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer,
>
> (3) which involved a pre-pubescent minor and a minor who had not attained 12 years of age.
>
> The government is required to prove that the defendant knew that the visual depiction portrayed a person under the ae of 12 and that the minor was engaged in sexually explicit conduct

Id. at 15-16.

The Court instructed the jury as to the following with respect to proving knowledge or intent:

> The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by

22

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

As to this case, the United States must show that the defendant had knowledge of the general nature of the contents of the images. Although the defendant need not have specific knowledge as to the sexual acts depicted in the images, the defendant must have had knowledge or reason to know, or an awareness or notice, or a belief or ground for belief warranting further inspection or inquiry, that the images visually depict sexually explicit conduct. Similarly, it is not necessary that the defendant have specific knowledge of the identity or precise age of the person depicted. It is sufficient for Counts One through Three if he knows or is aware that the image depicts a child under the age of 18, and for Count Four, if he knows or is aware that the image depicts a child under the age of 12.

The defendant's knowledge may be shown by direct or circumstantial evidence, or both. Eyewitness testimony of the defendant's perusal of the images is not necessary to prove his awareness of the contents; the circumstances may warrant the inference that the was aware of what the image depicts.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

Furthermore, the defendant's belief as to the legality or illegality of the images is irrelevant. The United States need not prove that the defendant knew that the images

USA V. HARP                                                            1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

> themselves or the portrayals in them were illegal.

Id. at 18-20. With respect to "prior acts," the Court instructed the jury as follows:

> You have heard evidence that the defendant may have previously committed other acts which may constitute receipt of child pornography. The defendant is not charged with these other offenses. You may consider this evidence only if you unanimously find it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt.
>
> If you find that these offenses have not been proved, you must disregard them. If you find that these offenses have been proved, you may consider them to help you decide any matter to which they are relevant. You should give them the weight and value you believe they are entitled to receive. You may consider the evidence of such other acts for its tendency, if any, to show the defendant's propensity to engage in the acts charged in the Indictment, to determine the defendant's intent, to determine the identity of the person who committed the acts charged in the Indictment, to determine the defendant's opportunity to commit the acts charged in the Indictment, and to rebut the contention of the defendant that his participation in the offenses charged in the Indictment was the result of accident, mistake, or to rebut the issue of the defendant's alibi.
>
> Remember, the defendant is on trial only for the crimes charged in the Indictment. You may not convict a person simply because you believe he may have committed similar acts in the past. Bear in mind at all times the Government has the burden of proving that the

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

> defendant committed each of the elements of the offenses charged in the Indictment.

Id. at 10-11.

The evidence presented during trial was sufficient for a rational jury to determine that the receipt and possession of child pornography was knowing. The Government presented evidence that the laptop was in Defendant's office area, near Defendant's work computer and paperwork, plugged in, on the date when the search occurred. The evidence showed that Defendant was the predominant user of the laptop for nearly ten years and that Amy Harp used it on occasion. There was no indication in the laptop that anyone other than Defendant or Amy Harp used the laptop to log into websites or email. The laptop was in Defendant's control and custody.

As the Court instructed the jury, knowledge is not something that is easily provable by direct evidence, but it can be determined from other circumstances. In this case, the Government relied on other circumstances to prove knowledge. For instance, Defendant kept an old laptop in his office, plugged-in and ready to use, despite the presence of newer devices in his home. The jury could consider the fact that the old laptop was kept through at least two moves, and it was placed in Defendant's "office area" instead of the living room. Additionally, Agent Thigpen testified

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

that while the search was ongoing, Defendant repeatedly looked up to the loft.  These facts allow the jury to draw reasonable inferences and conclusions that Defendant had knowledge of the child pornography.

The Government utilized Rule 404(b) and 414(a) evidence to demonstrate that Defendant had been searching for, downloading, viewing, and deleting child pornography for a ten-year period. The search terms used over the ten-year period were similar and related to a very specific genre of child pornography.  The Government also presented testimony that on at least two dates when the laptop was being used to download child pornography, Defendant was logging into websites related to his work or his personal email account.  The admin log-in count showed that nearly every time the computer was used for a four-year period, except for two brief segments, it was used to access child pornography. The thumb drive contained evidence of files containing suspected child pornography, prior to Defendant's first use of the laptop. The thumb drive contained evidence that Defendant used it for his assignments in school, and his school files were created within one or two months of the creation of the child pornography files. Defendant possessed and used the thumb drive, and the jury was free to consider thumb drive evidence, along with all of the

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

historical restore point evidence, for the purposes the Court listed in its jury instructions. See ECF No. 75 at 10-11.

As the Court instructed the jury, it was free to consider the testimony of Defendant and his witnesses and choose to believe the testimony or disregard it, just as it would with any of the Government's witnesses. See United States v. Burgos, 94 F.3d 849, 868 (4th Cir. 1996). In this case, it appears that the jury did not believe the testimony of Defendant and his witnesses. While Defendant produced some documentation to support his alibis, the alibis were not ironclad. With respect to Count One, on April 4, 2019, the downloads took place between 7:55 a.m. and 7:56 a.m. It is undisputed that Defendant's interview took place later in the day, and there was no direct evidence that he was not at home while the downloads took place — only testimony that he generally would have left for work by then. While Amy testified that Defendant had left for work by then, and she remembered it well, she did not remember whether Jeremy Harp was at her home that morning. With respect to Count Two, on September 18, 2020, the downloads took place between 3:12 p.m. and 3:19 p.m. None of the witnesses had firsthand knowledge that Defendant was actually at the job site with his father-in-law that day — only that he was generally working on the job at the time. Amy Harp also testified that she was not home that afternoon.

USA V. HARP                                                          1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

With respect to Count Three, on September 21, 2020, the downloads took place between 11:59 a.m. and 12:34 p.m.  It would be rational for the jury to disbelieve the Harps' testimony about when they arrived home from the car dealership.  At 10:00 a.m., Amy Harp texted her mother to let her know that they had bought the car.  Still, Defendant and Amy testified that they did not leave the car dealership for two more hours because they were waiting for insurance information.  Amy first testified that she and Defendant arrived home at 1:00 p.m., and then she testified that they were home by 12:50 p.m.  Brenda Westwood, on the other hand, testified that Amy was at her (Brenda's) house at 12:00 p.m. Even if the jury believed that Defendant was not home during the downloads relating to one or more of the charged counts, Agent Ryan testified that files could be scheduled for future download in Shareaza, so the jury could have reasonably concluded that Defendant would not have needed to be physically present at the laptop at the time of a download.

The jury also had a reasonable basis to reject the defense's theory about Jeremy Harp.  The defense witnesses never directly tied Jeremy to the Harps' home on the dates charged in the Indictment.  No one tied him to a similar crime that could have reasonably led the jury to suspect him of the crimes charged here. The testimony regarding Jeremy was vague, never pinning down his

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

presence at an exact time, and, importantly, Amy Harp never told law enforcement about Jeremy. Further, if Jeremy is a sophisticated computer hacker, he would not have left child pornography in the laptop's recycle bin, where it remained accessible. It is rational that the jury rejected the theory that Jeremy would arrive at the Harps' home when no one was there, download child pornography, view child pornography, delete child pornography, and leave before the Harps came back.

The Court agrees with the Government that the cases cited by Defendant, all of which also challenged the "knowing" element, are distinguishable from this matter. In Lowe, child pornography was found on a computer in the defendant's home, and the defendant shared the home with his wife and a child who was living with them temporarily. United States v. Lowe, 795 F.3d 519, 520 (6th Cir. 2015). There was testimony that the laptop belonged to the defendant, and the laptop had the defendant's name as a username, but anyone in the home could have accessed the computer and the Shareaza program because nothing was password protected. Id. at 523. The evidence showed that a user downloaded the Shareaza program in February 2011 and downloaded child pornography between March and August 2011. Id. at 520, 521. In general, there was no significance to the laptop's browsing history, but it could have been presumed, based on innocuous searches, that it was used by an

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

adult.  Id. at 523-24.  The court focused on whether the evidence sufficiently demonstrated that the defendant, as opposed to his wife, was the one who knowingly received, distributed, and possessed the child pornography.  Reviewing all of the evidence, the court found that a juror "could only speculate about whether" the user was the defendant or his wife, finding that the evidence was insufficient to sustain the conviction.  Id.

In Pothier, child pornography was found on a laptop in the defendant's living room, and the laptop was not password protected.  United States v. Pothier, 919 F.3d 143, 144 (1st Cir. 2019).  The defendant, along with two other people, received mail at the home.  Id.  The defendant admitted that the laptop was his, but it contained documents relating to at least two people, including the defendant.  Id. at 145.  The court, noting numerous evidentiary gaps, found that the evidence was insufficient to sustain the defendant's conviction.  Id. at 148.

In Moreland, child pornography was found on two home computers.  United States v. Moreland, 665 F.3d 137, 140 (5th Cir. 2011).  When the laptops were seized, the defendant's father was living in the defendant's home with the defendant and his wife.  Id.  All three individuals regularly used the two computers, and all three had access to the defendant's username, password, and email account.  Id.  Testimony established that the computers were

30

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

used to visit child pornography websites during the year 2007. Id. at 146.  Other testimony referred to the defendant's father's "obsession with pornography," as well as his efforts to destroy his own hard drive after learning that the defendant was being investigated.  Id. at 147.  The witness who examined the computers could not testify as to where the images came from, when they were received and deleted, or who was operating the computers at the time.  Id. at 151.  The court found that the evidence was insufficient to sustain the defendant's conviction.  Id. at 155.

Here, in contrast to all three cases, additional and specific evidence linked Defendant to the child pornography as opposed to anyone else, and it linked him to it for a longer period of time. The evidence at trial established that Amy Harp was the only other known user of the laptop.  No one testified to seeing Jeremy Harp use the laptop — the theory that he used it is mere speculation. Hammer testified that Defendant's devices showed a pattern of activity that included accessing child pornography, watching it, and deleting it, spanning nearly ten years.  Defendant's thumb drive, which he used as a student, contained child pornography in 2009 and 2010.  The restore points on his personal laptop, which he bought in 2011, indicated that the laptop was used to search for child pornography in 2012.  Defendant did not meet Amy Harp until June 2012 and did not marry her until 2015.  Thus, child

USA V. HARP                                                    1:23-CR-69

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

pornography was sought out, and the type of pornography sought out remained consistent, both before Defendant's relationship with Amy Harp and after.  The laptop remained with Defendant while he lived in at least three different residences.  The laptop was linked to Defendant's email address and work website.  The laptop was not located in a common living area.  It was found in the loft near what appeared to be Defendant's work computer and work documents.  It would have been reasonable for the jury to believe, based on the evidence presented, that the loft was Defendant's personal area, and he used his old laptop in the loft to download and view child pornography in private.

Overall, the evidence elicited at trial, along with all reasonable inferences derived therefrom, supports the jury's conclusion beyond a reasonable doubt that Defendant was the person who knowingly received and possessed the child pornography found on the laptop.  The interests of justice do not require the Court to conduct a new trial.

### V.    CONCLUSION

For the reasons discussed above, Defendant's motion is **DENIED** [ECF No. 84].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL [ECF NO. 84]**

DATED: December 9, 2024


THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA