IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

United States of America,

v.                                                         Criminal No. 1:23-CR-69

Christopher Harp,

    Defendant.

**DEFENDANT'S MOTION TO VACATE JUDGMENT AND/OR GRANT A NEW TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

INTRODUCTION

Defendant Christopher Harp, by and through undersigned counsel, respectfully moves this Court pursuant to Rule 33 of the Federal Rules of Criminal Procedure to vacate the judgment of conviction and/or grant a new trial. The basis of this motion is newly discovered evidence that demonstrates Defendant's innocence of the charges of possession and receipt of child pornography. Specifically, Defendant's brother, Jeremy Harp, has provided a sworn confession, recorded before a court reporter, in which he admits to being the individual responsible for the receipt and possession of the child pornography in question.

FACTUAL BACKGROUND

1. Defendant Christopher Harp was convicted by a jury of possession and receipt of child pornography in violation of Title 18, United States Code, Sections 2252A(a)(2)(A); 2252A(b)(1); 2252A(a)(5)(B); and 2252A(b)(2) on April 25, 2024.

2. Throughout the trial, the defense presented evidence and testimony asserting that Defendant was not the individual responsible for the offenses charged. The defense specifically argued that the evidence pointed to Defendant's brother, Jeremy Harp, as the true perpetrator.

3. Shortly after Christopher Harp's conviction, family members retained the services of a private investigator to review certain evidence and testimony of the government's case, and to attempt to locate Jeremy Harp.

4. Said investigator was able to locate Jeremy Harp, who was homeless at the time, and brought Jeremy Harp to Christopher Harp's defense counsel's office on August 6, 2024, to be interviewed.

5. At said interview, Jeremy Harp denied being the individual who was responsible for downloading child pornography on the Hewlett Packard computer owned by Christopher Harp. However, Jeremy Harp did admit that he was the one who originally set up the subject computer, that he used the computer when he was at Chris Harp's home, and that he was present at Chris Harp's home on different occasions when neither Chris Harp nor his wife were present. *See Affidavit of Thomas Gorgone, attached hereto as "Exhibit A".*

6. During said interview Jeremy Harp also admitted that he had helped Chris Harp and Amy Harp move out of a townhome into Amy's parents' home, then helped them move out of Amy's parents' home into the home that Chris and Amy Harp had built.

7. Thereafter, on September 24, 2024, Jeremy Harp reached out to Chris Harp's defense counsel, via phone, and stated that he was now willing to confess to being the individual responsible for downloading child pornography on Chris Harp's computer and that he would provide a statement under oath.

8. Defense counsel made the Assistant United States Attorney aware of the call and told her he would try to coordinate the statement in Kentucky, as that is where Jeremy Harp, who was still homeless, was staying. The Assistant United States Attorney responded to the email on October 8, 2024. Said emails are attached hereto as "Exhibit B."

9. On October 4, 2024, a recorded statement, under oath, was ready to be taken at a law firm in London, Kentucky, before a court reporter. Jeremy Harp failed to appear.

10. Jeremy Harp then called Chris Harp's defense counsel a day later and explained that the reason he didn't appear was because his father told him "it wouldn't do any good."

11. Defense counsel had no further contact with Jeremy Harp, to his recollection, until Jeremy Harp appeared, unannounced, at his office in Morgantown, WV, on December 16, 2024.

12. At that time, Defense Counsel was in Charleston, WV, for a scheduled week-long mediation. Upon being notified via text that Jeremy Harp was at the office and wanted to speak with him, the undersigned informed his staff that he had nothing

    to say to Jeremy Harp, but if Jeremy wanted to provide a statement under oath, arrangements would be made to do so.

13. Upon being informed that Jeremy wished to provide a statement under oath, arrangements were quickly made to get a court reporter via Zoom. Defense counsel took a break from the mediation and took Jeremy Harp's statement under oath via Zoom. See "Exhibit C" attached hereto.

## LEGAL STANDARD

Under Rule 33 of the Federal Rules of Criminal Procedure, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions based on newly discovered evidence must meet the following criteria:

1. The evidence must be newly discovered;

2. The failure to discover the evidence must not be due to a lack of diligence;

3. The evidence must not be merely cumulative or impeaching;

4. The evidence must be material to the issues involved; and

5. The evidence must likely produce an acquittal.

## ARGUMENT

I. The Evidence Is Newly Discovered

The sworn confession of Defendant's brother, Jeremy Harp, was obtained only after the trial concluded and could not have been discovered earlier through the exercise of due

diligence. Jeremy's homelessness during the prosecution made him difficult to locate, further preventing the defense from securing his testimony during trial. This confession constitutes new evidence unavailable to Defendant at the time of trial.

II. The Evidence Meets the Criteria for a New Trial

The newly discovered confession is not cumulative or impeaching; rather, it directly exonerates Defendant and identifies the true perpetrator. The evidence is material and directly impacts the core issue of the case: whether Defendant knowingly received and possessed child pornography.

The confession is highly likely to produce an acquittal if presented to a jury, given that it confirms the defense's theory of the case and directly contradicts the prosecution's evidence.

Moreover, the additional evidence introduced at trial—showing that Jeremy Harp set up the computer, had access to the home, and was present when Christopher Harp was absent—further supports the defense's argument of innocence.

III. Relevant Case Law Supports Granting a New Trial

The Fourth Circuit and the Supreme Court have consistently held that newly discovered evidence that undermines the integrity of a conviction warrants a new trial. See, e.g., **United States v. Fulcher,** 250 F.3d 244 (4th Cir. 2001) (granting a new trial where newly discovered evidence directly contradicted key evidence presented at trial); **United States v. Agurs**, 427 U.S. 97 (1976) (recognizing the obligation of the court to ensure that the defendant receives a fair trial in light of newly discovered evidence).

Additionally, in **Napue v. Illinois**, 360 U.S. 264 (1959), the Supreme Court emphasized the fundamental requirement of justice in cases where new evidence surfaces post-trial that casts doubt on the defendant's guilt.

IV. Interests of Justice Require Relief

The interest of justice compels this Court to vacate the judgment and/or grant a new trial. Convicting an innocent person undermines the integrity of the judicial system and constitutes a manifest injustice.

CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court vacate the judgment of conviction and/or grant a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Respectfully submitted,

J. Bryan Edwards (State Bar #6886)
Cranston & Edwards, PLLC
1200 Dorsey Ave., Suite II
Morgantown, WV 26501
Phone: (304) 296-3500
Email: bedwards@cranstonedwards.com
Dated: January 2, 2025