```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                          AT CLARKSBURG
```

------------------------------x
UNITED STATES OF AMERICA,     :
                              :
      Plaintiff,              :
                              : CRIMINAL ACTION NUMBER:
  vs.                         : 1:23-CR-69
                              :
CHRISTOPHER HARP,             :
                              :
      Defendant.              :
------------------------------x

     Proceedings had in the pretrial conference of the above-styled action on April 4, 2024, before the Honorable Thomas S. Kleeh, Chief District Judge.

                              - - -

APPEARANCES:

FOR THE UNITED STATES OF AMERICA:

    Jennifer T. Conklin, Esq.
    U.S. Attorney's Office
    1125 Chapline Street, Suite 3000
    Wheeling, WV 26003
    jennie.conklin@usdoj.gov

    David J. Perri, Esq.
    U.S. Attorney's Office
    P.O. Box 591
    Wheeling, WV 26003
    david.perri@usdoj.gov

FOR THE DEFENDANT:

    J. Bryan Edwards, Esq.
    Cranston & Edwards, PLLC
    1200 Dorsey Avenue, Suite II
    Morgantown, WV 26501
    bedwards@cranstonedwards.com

The Defendant was present in person.

Proceedings recorded by electronic sound recording.
Transcript produced by computer-aided transcription.

 1                         Thursday, April 4, 2024, 10:39 AM
 2                                  - - -
 3         THE COURT:  If the clerk would be kind enough to call
 4   our next case, please.
 5         THE CLERK:  The United States of America versus
 6   Christopher Harp, Criminal Case Number 1:23-CR-69.  Mr. Harp is
 7   present in person.
 8      Will counsel please note your appearance for the record.
 9         MS. CONKLIN:  Jennifer Conklin and David Perri on
10   behalf of the United States.
11         MR. EDWARDS:  Bryan Edwards on behalf of the
12   Defendant, Chris Harp.
13         THE COURT:  All right.  Good morning, counsel.
14      Good morning, Mr. Harp.
15      We've convened for a final pretrial conference.  Trial is
16   currently scheduled to commence on April 16th, 2024.
17      Ms. Conklin, any obstacles the Government has identified
18   proceeding on that date at this point?
19         MS. CONKLIN:  None that the Government is aware of,
20   Your Honor.
21         THE COURT:  All right.  Mr. Edwards, any?
22         MR. EDWARDS:  No, Your Honor.
23         THE COURT:  Okay.  Well, great.
24      Somehow, someway, this matter is the only case set for
25   trial that day.  So we do not have any immediate obstacles in

1  terms of logistics here.  We do have a trial that starts next
2  week.  We'll see if it completes in that week.  But we left an
3  extra day in there to tidy up, if need be, before this case
4  begins.  So we should be, from -- again, from a logistics
5  standpoint, in good shape to proceed as we're scheduled.
6      I know we have a couple motions, the Government's
7  affirmative motion in limine with respect to the Rule 414 and
8  404(b) evidence.  And we did receive defense's response to
9  that.
10     It would be my plan to convene an evidentiary hearing
11 subsequent to this, before trial, to finalize those -- or not
12 finalize -- to get through those issues.  It strikes the Court
13 that we need to have a proper evidentiary record and basis to
14 deal with those issues.  We're working through our calendar now
15 to find a spot.
16     In terms of witnesses with respect to the Rule 414 and
17 404(b) evidence, Ms. Conklin, how many witnesses would you
18 anticipate calling?
19          MS. CONKLIN:  Your Honor, I think we could -- I think
20 we could get through it with one, the --
21          THE COURT:  Okay.
22          MS. CONKLIN:  -- the one witness.
23          THE COURT:  That was my assumption.
24     Any witnesses you would anticipate calling, Mr. Edwards?
25          MR. EDWARDS:  Not -- none, Your Honor.

1                THE COURT: Okay. All right. That will help us for
2    planning purposes. Again, we do have a trial next week that's
3    going to consume those five days. But we'll find a spot where
4    we can convene to deal with these issues, and we'll be in touch
5    in short order to take those up.
6        Any stipulations at this point the parties have reached?
7                MS. CONKLIN: Not at this point, Your Honor. But I
8    know counsel and I will be working towards prepping it, and we
9    will definitely let the Court know at that time.
10               THE COURT: Okay. All right. Yeah, just keep us
11   posted on anything so that we can incorporate that into our
12   trial plan of when we alert the jury to any agreements or
13   stipulations.
14       Any outstanding discovery or other disclosures that
15   haven't been taken care of yet, Ms. Conklin?
16               MS. CONKLIN: No, Your Honor. I believe we've
17   provided everything.
18               THE COURT: Okay. Any *Brady* materials still
19   outstanding?
20               MS. CONKLIN: No, Your Honor.
21               THE COURT: Any *Jencks* materials still outstanding?
22               MS. CONKLIN: No, Your Honor. I did provide *Jencks*.
23               THE COURT: Okay. Any *Giglio* materials that's
24   outstanding?
25               MS. CONKLIN: No *Giglio* -- I have no *Giglio* evidence.

```
 1              THE COURT:  Okay.
 2              MS. CONKLIN:  And I have advised counsel that I have
 3  no Giglio.
 4              THE COURT:  All right.  Perfect.
 5       I assume, then, no witnesses the Government has identified
 6  at this point with prior criminal history impeachment built in.
 7              MS. CONKLIN:  No, Your Honor.
 8              THE COURT:  Okay.  Mr. Edwards, any you've
 9  identified?
10              MR. EDWARDS:  Sorry, Your Honor.  I'm just smiling
11  because all their witnesses are agents, so...
12          But no, Your Honor.
13              THE COURT:  Okay.
14              MR. EDWARDS:  I think we're good.
15              THE COURT:  All right.  Always better to ask.
16       Okay.  Any audio or video evidence, Ms. Conklin?
17              MS. CONKLIN:  Yes, Your Honor, there will be.
18  Because as this case relates to the possession of child
19  pornography, there will be video evidence.  We are going to be
20  going through that and determining what we are going to do.  I
21  know from previous trials with the Court that the Court is --
22  would prefer that we show smaller clips of videos as opposed to
23  the entirety of a five-minute video.  So that's something that
24  we'll be working on, on reducing those down.
25              THE COURT:  Okay.  All right.  We'll put final
```

```
 1  discussion on those exhibits on our to-do list.
 2       Is this your first criminal trial here, Mr. Edwards?  I
 3  have you've been here for a civil party or two.
 4            MR. EDWARDS:  In front of you, Your Honor.  But no.
 5  I've had a lot in front of --
 6            THE COURT:  Right.  I'm sorry.
 7            MR. EDWARDS:  Yes.
 8            THE COURT:  Sorry.  No, no, no.  I -- understood.
 9            MR. EDWARDS:  Yeah.
10            THE COURT:  Subject to my judicial whims and
11  eccentricities, I should have -- I should have said.
12       We will -- we'll convene the morning of the 16th
13  upstairs in the magistrate courtroom at 9:00 --
14            MR. EDWARDS:  Okay.
15            THE COURT:  -- with jury selection slated to begin at
16  9:30 here on the second floor in the district courtroom.  We'll
17  use the 9:00 time to review the Court's planned voir dire and
18  take up any last-minute issues, including what exactly we might
19  be looking at in terms of these exhibits.  I'll leave counsel
20  be to talk about those until then.  But we'll take that up at
21  that point as well.
22       I know we've got some 404(b) issues with respect to the
23  Government's pending motion.  Any other 404(b) evidence,
24  Ms. Conklin, other than that set forth in the Government's
25  motion?
```

```
 1              MS. CONKLIN:  Just what's been presented in the
 2   Government's motion, Your Honor.
 3              THE COURT:  Okay.  Any you anticipate at this point,
 4   Mr. Edwards?
 5              MR. EDWARDS:  No, Your Honor.
 6              THE COURT:  Okay.  Any Fifth Amendment issues at this
 7   juncture the Government has identified with respect to any of
 8   the witnesses?
 9              MS. CONKLIN:  No, Your Honor.
10              THE COURT:  Okay.  Mr. Edwards, any?
11              MR. EDWARDS:  No.  None, Your Honor.
12              THE COURT:  All right.  How many days does the
13   Government think its case will take to present?
14              MS. CONKLIN:  Your Honor, the Government's case, I
15   think, should take probably, at most, a day and a half.
16              THE COURT:  Okay.  All right.
17        Mr. Edwards, any thought on how long a defense
18   presentation might be?
19              MR. EDWARDS:  Your Honor, I believe we could probably
20   wrap up well within a day, maybe a half a day.
21              THE COURT:  Okay.  All right. We'll tell our jurors
22   we anticipate three days for trial, including the first day for
23   jury selection, as we go through voir dire.
24        We would anticipate calling a bigger number of jurors --
25   "bigger" -- a larger number of jurors than we normally do just
```

1   given the allegations and the anticipated evidence in this
2   case.
3        Consistent with our prior practice, just given the space
4   and logistical issues here in the courtroom, as we go through
5   voir dire, if it becomes necessary to have any individual
6   follow-up with any of our prospective jurors, we'll most likely
7   head back to the jury room to do that.  There's not a whole lot
8   of room up here; and honestly, if you're more than one person
9   removed from the juror, you can't hear what's going on anyway.
10  So we'll probably get some steps in as we go through jury
11  selection.
12       Just a rundown so everybody is on the same page.  With
13  respect to trial procedures, we'll see what our jury
14  composition looks like.  As counsel, I'm sure, can surmise,
15  some of our jurors might have a lengthy commute day to day.  If
16  they're from Preston County or elsewhere, they could have an
17  hour to two-hour drive in.  Depending on our geographical
18  composition, we'll start at 9:30 every day, unless we have a
19  relatively local, easier commute group.  Then maybe we'll start
20  at nine.  But we'll play that by ear.
21       We'll take a morning break, a lunch break, an afternoon
22  break from our jurors' perspective, and we'll try to go to 4:30
23  to 5:00 every day to max out their time and be as efficient
24  with our jurors' time as we can.
25       Along those lines, counsel will get a copy of our

1  work-in-progress jury charge before or early during trial.  We
2  treat that as a living, breathing document as trial goes on,
3  tailoring it.  But in terms of a charge conference, we will
4  find a spot outside of normal jury time to work on that,
5  whether that's early one day, at lunch, or after our jurors are
6  dismissed for the day.
7       I made a couple grievous errors early in my reign of
8  terror where I had a jury just wasting away for hours; in fact,
9  one case felt like a whole day.  So live and learn.  We'll find
10 a spot to work on that where we're not inconveniencing our
11 jurors too, too much.
12      You're free-range chickens during trial, subject to sudden
13 change of mind from the bench.  You're free to move about, do
14 what you need to do within reason.  Just be mindful of sort of
15 a foot-and-a-half to three-foot DMZ between you and the jury
16 rail.  No one has made me put duct tape down on my new pretty
17 blue-and-gold carpet, but I reserve the right to descend at
18 some point and do so.  So just be mindful of their personal
19 space.  But otherwise, you're free to be wherever you are
20 during trial.
21      Speaking of changing judicial eccentricities and whims.
22 I'll ask you Monday morning your anticipated requested length,
23 we're calling it now, for openings.  And then we'll do that for
24 closings as well, trying to, again, be as efficient of our
25 jurors' time usage as possible.  I'll do my very best to not

1  get in your way to fully present your case.  But give some
2  thought as to how much time might -- you might actually use,
3  realistically.  And we may try and hold you to that within
4  reason.  But just something to keep in mind as you come down
5  the stretch with your trial prep.
6       It continues to be my expectation everybody will play well
7  in the sandbox in terms of witness schedules and the rest.  If
8  we've got any travel or other logistical scheduling issues with
9  witnesses, please keep us in the loop so we can plan to deal
10 with that, particularly with our jurors.  But if we can have a
11 witness or two in the hole so that we're rolling full-steam
12 ahead, it would be much, much appreciated.  But again, if you
13 wouldn't mind keeping us realtime updated on any changes of
14 relevance on that front.
15      Any questions on judicial trial eccentricities at this
16 point?
17           MS. CONKLIN:  Nothing from the Government, Your
18 Honor.
19           THE COURT:  Okay.  Mr. Edwards?
20           MR. EDWARDS:  Judge, I -- sometimes I make
21 assumptions, and I shouldn't.  But I'd assume that all
22 witnesses will be sequestered without having to do a formal
23 motion for sequestration.
24           THE COURT:  We'll ask, after we seat our jurors, if
25 anyone would like to move to sequester the witnesses.  I have

1  yet to deny that.
2      I will ask -- since you-all are much more familiar with
3  the witnesses than we are, I'll ask counsel to help us police
4  that, if necessary.
5      Of course, we have our two very spartan conference rooms
6  across the way, certainly less palatial than what you all enjoy
7  in Wheeling all the time.  But with that said, feel free to use
8  those.  I think tradition is Government left, defense right, if
9  memory serves.  But witnesses can wait there or out in the
10 hallway, of course.  But just be mindful of the Court's
11 sequestration order with our witnesses.
12     Any other questions, Mr. Edwards?
13          MR. EDWARDS:  No, Your Honor.
14          THE COURT:  Okay.  Since the New Year, we've had
15 mixed results with our audiovisual system.  Sorry.
16          MS. CONKLIN:  That's okay.
17          THE COURT:  Come on in whenever to give it a whirl.
18 But we've done that, and everything is fine; then we show up
19 the first day of trial, and I don't know what happens.  We'll
20 do our best.  No freakouts.  Everything is fine.  We'll deal
21 with it as we go.  Just FYI, some days it works; some days it
22 doesn't.  And we'll deal with it as we go.
23          MS. CONKLIN:  We'll check in -- we'll check in with
24 Ms. Jones.
25          THE COURT:  It's --

1        MS. CONKLIN:  See how it goes.
2        THE COURT:  Yeah.  Again, it might work; it might
3   not.  Day to day, witness to witness, exhibit to exhibit, we'll
4   keep our fingers crossed, and we'll deal with it as we go.
5   Just nobody freak out.  Everything is fine.
6        I'm trying to think what else.  I think that's about it in
7   terms of trial logistics.
8        Any other assumptions or questions, Mr. Edwards?
9        MR. EDWARDS:  No, Your Honor.  Thank you.
10       THE COURT:  Okay.  All right.  Again, we'll find a
11  date to take up the pending motion.  I didn't want to try and
12  squeeze that in.  I know it's an important issue.  So we'll
13  have a separate hearing on that, again, before trial.
14       I assume, but I'll ask.  Ms. Conklin, any -- I assume
15  there's no transcripts with respect to any of the audio or
16  video evidence.  Correct?
17       MS. CONKLIN:  No, Your Honor.
18       THE COURT:  Okay.  All right.  Any curveballs or
19  peculiar evidentiary issues the Government anticipates at this
20  point?  My favorite question.
21       MS. CONKLIN:  No, Your Honor. Nothing I can think
22  of.
23       THE COURT:  Okay.  Mr. Edwards, any you've identified
24  yet --
25       MR. EDWARDS:  I hope not, Your Honor.

1         THE COURT: -- that you're willing to share? Okay.
2   Again, I know we have a couple issues teed up. We'll -- we
3   will take that up.
4       Okay. All right. Anything else at this point, then, from
5   the Government?
6         MS. CONKLIN: Your Honor, the only thing that I can
7   possibly think of is counsel filed a response to my 414. I
8   would just ask if the Court would give me -- indulge me in
9   giving me 'til tomorrow to file a reply to that, if I decide to
10  file a reply, just because I'll be traveling today as well and
11  might not get that done.
12        THE COURT: No. Certainly. We won't squeeze a
13  hearing in between now and tomorrow anyway. So, certainly,
14  Ms. Conklin. You can have until early next week, if you'd
15  like, if that makes life a little bit --
16        MS. CONKLIN: That would be great. Thank you.
17        THE COURT: -- easier. But like I said, we're going
18  to put our heads together and find a spot where we might be
19  able to convene for a hearing on that. So, yeah, there's some
20  just time naturally baked in. Okay.
21      Mr. Edwards, anything?
22        MR. EDWARDS: I don't believe so, Your Honor, no.
23        THE COURT: Okay.
24        MR. EDWARDS: I know next week the only conflict I
25  would have is I do have hearing down here, I think at 1:00 on

```
 1  Tuesday.
 2              THE COURT:  Okay.
 3              MR. EDWARDS:  Not in this court, but in Harrison
 4  County court.  So -- but I know you'll have another trial
 5  started.  But if this Court -- if you want to do it in the
 6  morning or that afternoon, I'll already be in town.  So
 7  whatever you'd like to do.
 8              THE COURT:  All right.
 9              MR. EDWARDS:  But otherwise, I actually -- and
10  otherwise, I left most of my week open for trial prep.  So I'm
11  good whenever.
12              THE COURT:  Okay. No. Understood. We'll -- like I
13  said, we'll try and find a spot to do that.  We'll see how that
14  goes.  We'll report back to everybody.
15              MR. EDWARDS:  Okay.
16              THE COURT:  Your indulgence appreciated if we find --
17  when we find a spot.
18              MR. EDWARDS:  Sure.
19              THE COURT:  But if you've got any conflicts, just let
20  us know.  Okay.
21       Ms. Conklin, any plea offers that have been extended to
22  Mr. Harp?
23              MS. CONKLIN:  Your Honor, this case started off with
24  a target letter.  And we did try and engage in discussions
25  about possible resolution in the case.  I believe my
```

1  predecessor might have outlined a plea.  It was my
2  understanding that the Defendant rejected that.  And
3  subsequently I have spoken to defense counsel about whether
4  there was some sort of resolution that we could come up with,
5  and it was not something that we could do.
6          THE COURT:  Okay.  Understood.  So conceptual, I
7  guess.  Con- --
8          MS. CONKLIN:  Pro- --
9          THE COURT:  A conceptual plea --
10         MS. CONKLIN:  Con- --
11         THE COURT:  -- proposal --
12         MS. CONKLIN:  A conceptual, hypothetically, if we
13 could do this for a plea.  And I said we cannot do that because
14 it's not done.
15         THE COURT:  No.  Understood.  Understood.
16    Does that comport with your recollection and historical
17 perspective, Mr. Edwards?
18         MR. EDWARDS:  Yes, Your Honor.
19         THE COURT:  Okay.  Mr. Harp, sir, I'm going to ask
20 you to stand so that Madam Clerk can swear you in.  There's a
21 couple questions you and I need to talk about.  Okay, sir?
22         THE DEFENDANT:  Okay.
23         THE COURT:  Thank you very much.
24    (Defendant sworn.)
25         THE CLERK:  Thank you.

```
 1            THE COURT:  All right.  Thank you so much, Mr. Harp.
 2   Obviously, sir, you've been sworn in, so you are under oath.
 3   Please keep in mind that any false statements you may make or
 4   false answers you give in response to any of my questions,
 5   those can form the basis of a separate criminal action against
 6   you for false swearing or for perjury.
 7        Do you understand that, sir?
 8            THE DEFENDANT:  Yes.
 9            THE COURT:  Okay.  With that said, if I pose a
10   question to you -- and I only have a couple -- that you believe
11   you'd like to talk to Mr. Edwards before you respond, just let
12   him know or let me know, and we'll take a break so you
13   gentlemen can talk.
14        Do you understand that?
15            THE DEFENDANT:  Yes, I do.
16            THE COURT:  Okay.  And also, let me offer you this
17   advice.  There are a couple questions I want to ask you just
18   about any plea conversations that have occurred.  I do not want
19   you to tell me, sir, about any of the substantive conversations
20   you've had with any of your counsel.  Those, of course, are
21   protected by the attorney-client privilege.  None of my
22   questions are meant or intended to elicit or get you to talk
23   about any of the specifics and substance of any of those
24   discussions you may have had with your lawyers.
25        Do you understand that?
```

```
 1            THE DEFENDANT:  I do.
 2            THE COURT:  Okay.  It's my understanding based on the
 3   lawyers' statements here today, sir, that there have been some
 4   discussions about the outlines of potential resolution of these
 5   charges against you via plea agreement.  And my question is
 6   simply this, sir.  Do you believe you've had sufficient time to
 7   consider those proposals and discuss them fully with your legal
 8   counsel?
 9            THE DEFENDANT:  Yes, I have.
10            THE COURT:  All right.  Okay.
11       Ms. Conklin, Mr. Perri, anything else we need to plan,
12   prepare for, or take up here today, then?
13            MR. PERRI:  No.  Thanks, Your Honor.
14            THE COURT:  Okay.
15            MS. CONKLIN:  Nothing.
16            THE COURT:  Nothing?
17       Mr. Edwards?
18            MR. EDWARDS:  No, Your Honor.  Thank you.
19            THE COURT:  Okay.  We'll be in touch about an
20   evidentiary hearing date on the pending motion, and we'll get
21   that set so we can at least get our evidentiary record set.
22   Then we'll get a ruling out so that counsel has it pretrial.
23       If anything comes up in the interim, you know how to get
24   ahold of us.  Otherwise, we'll see everyone at 9:00 on Tuesday,
25   the 16th, upstairs.
```

```
 1      I'll mention it now, Mr. Edwards.  I'll remind you on the
 2  16th too.  Our jurors will be here in the courtroom.  So just
 3  be mindful of that on the first day of trial.  We don't have a
 4  separate area for them to be, so they'll be here in the
 5  courtroom.  You and Mr. Harp will come downstairs, then come
 6  through those back doors.  But the room will be full.  Just be
 7  mindful it will be all of our prospective jurors.
 8      Okay.  All right.  I, myself, get to go to Wheeling after
 9  this.  Any traffic obstacles I need to be made aware of at this
10  point of the day?  Other than the usual joys of --
11          MS. CONKLIN:  Other than the usual --
12          THE COURT:  Okay.
13          MS. CONKLIN:  -- it's lovely weather.
14          THE COURT:  Oh, yes.  Okay.  All right.
15          MS. CONKLIN:  The highway is open.  No rivers have
16  flooded yet.
17          THE COURT:  I'll take it.
18          MS. CONKLIN:  Or no roads are flooded yet.
19          THE COURT:  All right.
20          MS. CONKLIN:  So you should be good making it to
21  Wheeling.
22          THE COURT:  Great.
23          MR. PERRI:  Just don't go to the Island, Judge.
24          MS. CONKLIN:  Yeah.
25          THE COURT:  Not going to.  I'm sure my mother
```

1  passenger will keep me advised of all the obstacles I'm
2  creating.
3       Okay.  All right.  Thank you.  Sorry for that aside, but
4  it strikes me I've got a group of experts on travel from
5  Wheeling.
6       Okay.  We'll see everyone the morning of -- well, we'll
7  see you at some point prior to the 16th for our evidentiary
8  hearing.  Otherwise, we'll see you the morning of the 16th.
9  We otherwise stand adjourned.  Thank you all very much.
10           MR. EDWARDS:  Thank you, Your Honor.
11           MS. CONKLIN:  Thank you.
12       (Proceedings concluded at 10:59 AM.)
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                          CERTIFICATE
 2
 3       I, Rachel Kocher, a Registered Professional Reporter and
 4   Official Reporter of the United States District Court for the
 5   Northern District of West Virginia, do hereby certify that the
 6   foregoing is a true and correct transcript of the electronic
 7   audio-recorded proceedings had in the above-styled action as
 8   reported by me stenographically, all to the best of my skill
 9   and ability.
10       I certify that the transcript fees and format comply with
11   those prescribed by the Court and the Judicial Conference of
12   the United States.
13       Given under my hand this 16th day of January 2025.
14
15
16                              _____
                                    *Rachel Kocher*
17                              Rachel Kocher, RPR/CRR
18
19
20
21
22
23
24
25
```